## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | |
|---|---|
| LEMUEL BANNISTER & MELISSA MOORE<br><br>        Plaintiffs,<br>   v.<br><br>CONTRACT CALLERS INC.<br><br>        Defendant. | Case No. 7:16-cv-349<br><br>**ORIGINAL COMPLAINT**<br><br>**CLASS ACTION** |

LEMUEL BANNISTER AND MELISSA MOORE ("Plaintiffs") individually and on behalf of others similarly situated jointly bring this action against Defendant CONTRACT CALLERS, INC. ("Defendant") to stop Defendant's telephone consumer abuse and illegal debt collection practices, and allege as follows upon personal knowledge as to themselves, and upon information and belief as to the conduct of others:

### INTRODUCTION

1.      Plaintiffs bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

2.      Defendant is a debt collector that engages in reckless and aggressive collection practices in violation of federal law and the rights of the called parties.

3.      Defendant repeatedly made unsolicited calls to Plaintiffs' cellular telephones in violation of the TCPA.  Defendant made the unauthorized and illegal calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") or pre-recorded voice as part of a continuing pattern of debt collection.  Where a Plaintiffs gave any prior consent, Defendant continued the harassing calls after the Plaintiff's revocation.

1

## PARTIES

4.      Plaintiff LEMUEL BANNISTER is a natural person and citizen of Philadelphia, Pennsylvania.

5.      Plaintiff MELISSA MOORE is a natural person and citizen of Midland, Texas.

6.      Defendant CONTRACT CALLERS, INC. is a corporation under the laws of the State of Georgia.  Defendant maintains its principal office in Augusta, Georgia, and may be served with process by serving its Registered Agent, Corporation Service Company, 40 Technology Pkwy South, #300, Gwinnett, Norcross, GA, 30092, USA.

7.      Upon information and belief, Defendant's officers, directors, vice-principals, agents, servants, or employees acted or failed to act, in all instances, with the full authorization, ratification or approval of the respective Defendant, in the normal course of business and within the scope of each actor's employment.

## JURISDICTION & VENUE

8.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331; this is a TCPA/FDCPA action.

9.      The Court has personal jurisdiction over the Defendant. This Defendant maintains continuous and systematic contact with this District and is essentially at home here.  It conducts significant, ongoing business in this District and purposefully availed itself of this District. The Court has specific personal jurisdiction over the Defendant because it targeted this District with its wrongful, accused acts, and/or emanated those acts from this District. The exercise of personal jurisdiction over the Defendant in this District does not offend traditional notions of fair play or substantial justice.

10.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. §

1332(d)(2). The amount in controversy, excluding interests and costs, exceeds $5,000,000.00; at least one member of the proposed class is a citizen of a different state from at least one Defendant's state.  Furthermore, the Plaintiff Class consists of at least one hundred members.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

<strong>LEGAL BASIS FOR THE CLAIMS</strong>

**The TCPA**

12.     Congress enacted the TCPA in 1991 to address certain practices that invade consumer privacy and pose a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC")-implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent.  If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[1]  Calls that include non-marketing messages require consent, but not written consent.  The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

13.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming that liability attaches to calls made to the wrong number or reassigned number, and clarifying that consumers may revoke consent through reasonable methods.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

14.     The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

15.     Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC").  See 47 C.F.R. § 64.1200(d).  The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]."  *Id*.  The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry.  *Id.* at § 64.1200(d)(3), (6).  Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA.  The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

16.     Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## FACTS APPLICABLE TO ALL PLAINTIFFS

17.     Defendant engaged in an aggressive debt collection/robocall campaign ("Campaign") that targeted people across the nation. Plaintiffs were directly targeted by Defendant's Campaign. Defendant's Campaign is a continuous course of conduct and a pattern of practice, conducted under a common policy or program.

18.     Although Plaintiffs may live in different states or cities, they share similar factual bases for Defendant's liability: marketing/debt collection pitch; lack of consent; use of an auto-dialer; targeting a mobile phone that the Plaintiffs used or reserved for keeping up with friends and family or other personal use; loss of valuable mobile phone minutes; and loss of privacy, or suffering the need for additional or extra measures to avoid telephone harassment and restore a sense of personal serenity, or maintain a sense of control over access to personal information/device; all of which arise out of Defendant's Campaign.

### FACTS SPECIFIC TO PLAINTIFF LEMUEL BANNISTER

19.     Around June 2015, Bannister began receiving calls from 706-250-5038, a number associated with Defendant. Bannister received up to and possibly more than 15 calls from Defendant.

20.     Bannister received all calls described above on a cellular telephone with number ending in 4659. Bannister is the regular carrier and exclusive user of the cellular telephone. The 4659 number has been registered with the National Do Not Call list since at least June 2012.

21.     The calls were an invasion of Bannister's privacy.

22.     Defendant rebuffed Bannister's effort that Defendant should calling.

23.     The calls to Bannister contained short beeps and an automated message. From the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Bannister believed Defendant used an ATDS, as defined by 47 U.S.C. § 227(a)(1).

24.     Defendant and/or persons acting on Defendant's behalf placed all the calls described above, without Bannister's prior express written consent and using an ATDS. To the extent Bannister ever provided consent to Defendant, he revoked such consent.

25.     Defendant's calls were not for an emergency under 47 U.S.C. § 227(b)(1)(A)(i).

26.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

27.     All calls Defendant made to Bannister violate 47 U.S.C. § 227.

### FACTS SPECIFIC TO PLAINTIFF MELISSA MOORE

28.     Around March 2016, Moore began receiving calls from 844-860-6122, a number associated with Defendant. Moore received up to and possibly more than 4 calls from Defendant.

29.     Moore received all calls described above on a cellular telephone with number ending in 4106. Moore is the regular carrier and exclusive user of the cellular telephone. The 4106 number has been registered with the National Do Not Call Registry since at least April, 2013.

30.     The calls were an invasion of Moore's privacy.

31.     Defendant rebuffed Moore's effort that Defendant should calling.

32.     The calls to Moore contained short beeps and an automated message. From the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Moore believed Defendant used an ATDS, as defined by 47 U.S.C. § 227(a)(1).

33.     Defendant and/or persons acting on Defendant's behalf placed all the calls described above, without Moore's prior express written consent and using an ATDS. To the extent Moore ever provided consent to Defendant, she revoked such consent.

34.     Defendant's calls were not for an emergency under 47 U.S.C. § 227(b)(1)(A)(i).

35.     On information and belief, Defendant dedicates a substantial portion of its business to debt collection.  Defendant regularly engages in the practice of collecting debts.

36.     All calls Defendant made to Moore violate 47 U.S.C. § 227.

# CLASS ACTION ALLEGATIONS

## A.    CLASS ALLEGATIONS

37.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2),

and (b)(3) on behalf of themselves and the following classes defined as follows (the "Class"):

> **"Robocall Class":** All individuals in the United States who received a call
> made by or on behalf of Defendant to the individual's cellular telephone
> through the use of an automatic telephone dialing system, or pre-recorded
> voice, or any other device having the capacity to dial numbers without
> human intervention, from October 16, 2013 to the date the Class is certified,
> where Defendant's records fail to indicate prior express written consent
> from the recipient to make such call.

> **"DNC Class":** All individuals in the United States who: (1) received more
> than one telephone call made by or on behalf of Defendant within a 12-
> month period; (2) to a telephone number that was registered with the
> National Do Not Call Registry for at least 30 days; and (3) for whom
> Defendant has no record of consent to place such calls.

38.    The following individuals are excluded from the Class: (1) any Judge or Magistrate

presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries,

parents, successors, predecessors, and any entity in which Defendant or its parents have a

controlling interest, and its current or former employees, officers, and directors; (3) Plaintiffs'

counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for

exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendant has been fully and finally adjudicated

and/or released.

39.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery

of economic injury on behalf of the Class, and it expressly is not intended to request any recovery

for personal injury and claims related thereto.

40.    Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf

of additional persons as facts emerge from discovery.

41.     Plaintiffs and members of the proposed Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiffs and the Class members *via* their cellular telephones using an ATDS, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid; invading the privacy of Plaintiffs and the Class members; subjecting the class members to the needless emotional hassle, extra sensitivity, watchfulness and diminution of personal serenity that comes with receiving multiple, intrusive, ghostly and/or robotic telephone calls.

**B.     NUMEROSITY**

42.     The exact size of the Class is unknown and not available to Plaintiffs at this time, but it is clear individual joinder is impracticable.

43.     On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendants' records.

**C.     COMMONALITY AND PREDOMINANCE**

44.     There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class.

45.     Common questions for the Class include, but are not necessarily limited to the following:

   a.     Whether Defendant's conduct violated the TCPA;

   b.     Whether Defendant or their agent(s) made telephone calls to consumers who did not previously provide Defendant and/or their agents with prior

express written consent to receive such phone calls after October 16, 2013;

c.    Whether Defendants or their agent(s) systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry.

d.    Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

e.    Whether Defendant or their agent(s) systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

f.    Whether Defendant and its agent(s) should be enjoined from engaging in such conduct in the future.

**D.    TYPICALITY**

46.    Plaintiffs' claims are typical of the claims of the other members of the Class.

47.    Plaintiffs and the Class sustained damages as a result of Defendant's uniformly wrongful conduct during transactions with Plaintiffs and the Class.

**E.    ADEQUATE REPRESENTATION**

48.    Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

49.    Plaintiffs have no interest antagonistic to those of the Class, and Defendant's has no defenses unique to any Plaintiff.

**F.    POLICIES GENERALLY APPLICABLE TO THE CLASS**

50.    This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and to make final injunctive relief appropriate with respect to the Class as a whole.

51.    Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs challenge hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to a particular Plaintiff.

**G.    SUPERIORITY**

52.    This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

53.    The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

54.    Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

55.    Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

56.    By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**(VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,**
**47 U.S.C. § 227, *ET SEQ.*)**

16.    Plaintiffs re-allege the foregoing as if fully set forth herein.

17.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

18.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

19.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### (KNOWING AND/OR WILLFUL VIOLATION OF
### THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

16.     Plaintiffs re-allege the foregoing as if fully set forth herein.

17.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.* and 47 C.F.R. §64.1200, *et seq.*

18.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

19.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## ATTORNEY'S FEES

20.     Each allegation in the foregoing paragraphs is re-alleged as if fully rewritten herein.

21.     Plaintiffs are entitled to and request attorney fees.

## JURY DEMAND

22.     Plaintiffs demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

- An order certifying this matter as a class action with Plaintiffs as Class Representative, and designating Hughes Ellzey, LLP as lead Class Counsel.

- An award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, *et seq.*;

- Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones, and enjoining Defendant from engaging in abusive and oppressive collection practices as outlined in this Complaint.

- Attorneys' fees and costs.

- All other relief just and proper.

Respectfully Submitted,

*/s/ Jarrett L. Ellzey*_____
W. Craft Hughes
Jarrett L. Ellzey
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
E-Mail: craft@hughesellzey.com
          jarrett@hughesellzey.com

Bryant A. Fitts
bfitts@fittslawfirm.com
**FITTS LAW FIRM, PLLC**
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Phone (713) 871-1670
Fax (713) 583-1492

**ATTORNEYS FOR PLAINTIFFS
AND PLAINTIFF PROPOSED CLASS**